## AFFIDAVIT OF PETER MILLIGAN

I, Special Agent Peter Milligan, depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  I have been employed as an ATF Special Agent since April 2009 and am currently assigned to the Boston Group VI Field Office.  As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by felons and other prohibited persons, and the use of firearms in drug trafficking/violent crimes, as well as the investigation of laws related to explosives violations and incendiary (arson) fires.

2.      I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy.  I have participated in numerous classes of in-service training relating to firearms/narcotics trafficking investigations and arson and explosives investigations.  I have been the affiant and/or participated in the execution of numerous state and federal search and arrest warrants pertaining to violations of the federal firearms, narcotics, arson, and explosives laws.  I have participated in dozens of investigations relating to the illegal acquisition and sales of firearms and narcotics.  During those investigations, I have participated in surveillance, the purchase of firearms, the purchase of narcotics, the execution of search warrants, and I have interviewed witnesses, suspects, and informants.  Through my law enforcement training, participation in undercover purchases of firearms, surveillance of firearms traffickers, interviews of suspects, and participation in search warrants and Title III electronic surveillances, I am familiar with the methods that are most commonly used by unlawful firearms traffickers and people dealing in firearms without a Federal Firearms License.  Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws.

3.      This affidavit is based on a multi-agency investigation into the criminal activities of Joao Victor Da Silva SOARES. The agencies involved in the investigation include: the ATF and the Department of Homeland Security, Homeland Security Investigations ("HSI").

4.      Pursuant to this investigation, there is probable cause to believe that SOARES has violated federal law, by conspiring, in violation of 18 U.S.C. § 371, to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). This affidavit is being submitted in support of an application for a criminal complaint charging SOARES with violation of 18 U.S.C. § 371 (the "Target Offense"). One of the individuals with whom SOARES conspired was Joao Vitor Dos Santos Goncalves Pimenta ("PIMENTA").[1]

5.      During this investigation, a cooperating witness ("CW-1") made controlled purchases of commercially manufactured firearms, Privately Made Firearms ("PMF") (sometimes referred to as "ghost guns"), and commercially manufactured ammunition from SOARES. Unlike commercially manufactured firearms, a PMF or "ghost gun" does not have a serial number. Based on my training and experience, I am aware that a PMF satisfies the definition of "firearm" under 18 U.S.C. § 922(a)(1)(A).

6.      Also, during this investigation, a second cooperating witness ("CW-2") arranged and orchestrated a buy/bust operation of commercially manufactured firearms from Vanderson OLIVEIRA ("OLIVEIRA")[2], SOARES, and other individuals .

7.      CW-1 has requested that their identity not be revealed for fear of reprisal or harm to their physical safety. Based on these fears, CW-1 is seeking protection from law enforcement to include possible relocation. I am aware of the identity of CW-1 and have met with them

---

[1] On September 13, 2024, Joao Vitor Dos Santos Goncalves PIMENTA was arrested pursuant to a federal arrest warrant (Case No. 24-MJ-8511-PGL) for violation of 18 U.S.C. § 922(a)(1)(A).
[2] On September 13, 2024, Vanderson OLIVEIRA was arrested pursuant to a federal arrest warrant (Case No. 24-MJ-8507-PGL) for violation of 18 U.S.C. § 371 and 18 U.S.C. § 922(a)(1)(A).

personally on numerous occasions. CW-1 has provided accurate, truthful and reliable information to law enforcement, including the ATF, HSI, and local police departments, in the past and continues to do so. CW-1 has no criminal history. CW-1 is presently receiving monetary and immigration benefits from the ATF.

8.   CW-2 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-2's identity and have met with CW-2 personally. CW-2 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and HSI, and local police departments in the past and continues to do so to the present. CW-2 has a criminal history which includes ten adult arrests and no convictions. CW-2 is presently receiving monetary benefits from the ATF. CW-2 is also seeking protection from retaliation based upon CW-2's cooperation with law enforcement in this case, including possible relocation.

9.   The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from cooperating witnesses, public records, database checks, and other investigations. The dates and times in this affidavit are approximate. Because this affidavit is being submitted for the limited purpose of supporting issuance of a criminal complaint for SOARES, I have not presented every fact learned during the investigation but only that information necessary to fully support probable cause for the criminal complaint.

**PROBABLE CAUSE**

10.  In July 2024, CW-1 provided information to ATF regarding PIMENTA trafficking firearms in and around central Massachusetts. Thereafter, CW-1, working with law enforcement,

made several controlled purchases of commercially manufactured firearms, Privately Made Firearms, and commercially manufactured ammunition from PIMENTA.

### August 26, 2024 – Two AR-15 Rifle Deal

11.     On or about August 26, 2024, PIMENTA (who had, at that point in time, sold at least eight firearms across five different dates to CW-1 prior to this transaction) agreed to facilitate a meeting at Stop & Shop in Malden, MA, between CW-1 and SOARES in order to sell two AR-15 rifles. Prior to the meeting, ATF agents searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video, and official government funds to purchase the firearm. CW-1 was under constant surveillance by law enforcement throughout the transaction. CW-1 arrived at the Stop & Shop and parked in the lot. A short time later, PIMENTA arrived in a blue Honda Civic and parked in the lot. PIMENTA was the driver of the blue Honda Civic and was accompanied by an unknown female who was seated in the front passenger seat. PIMENTA got out of the blue Honda Civic and entered the front passenger side of the UC vehicle. CW-1 and PIMENTA waited in the UC vehicle for the arrival of SOARES. During the wait, PIMENTA had several contacts with an individual believed to be SOARES to ascertain his estimated time of arrival. During one of the contacts with SOARES, SOARES attempted to get CW-1 and PIMENTA to meet at a residence in Everett, MA, to conduct the deal. Both CW-1 and PIMENTA refused to go to the Everett, MA residence. A short time later, SOARES arrived in a blue Toyota Prius and parked on the passenger side of the UC vehicle. SOARES was accompanied by an unknown male who was seated in the front passenger seat. PIMENTA got out of the UC vehicle and entered the rear of the blue Toyota Prius. Moments later, PIMENTA got out of the blue Toyota Prius with a large black suitcase. PIMENTA put the suitcase on the rear seat of the UC vehicle and entered the front passenger side

of the UC vehicle. At approximately the same time, CW-1 got out of the driver's side and entered the rear of the UC vehicle to inspect the contents of the suitcase. CW-1 opened the suitcase and observed two AR-15 rifles. CW-1 removed the two AR-15 rifles from the suitcase and placed them on the rear floorboard. SOARES removed the suitcase from the rear of the UC vehicle. PIMENTA got out of the front passenger side of the UC vehicle and entered the rear compartment with CW-1. At approximately the same time, SOARES entered the front passenger side of the UC vehicle. CW-1 provided PIMENTA with the $6,000 in official government funds. PIMENTA counted the money and provided SOARES with a portion of the $6,000. PIMENTA and SOARES conducted the sale of the two AR-15 rifles in exchange for $6,000.

12. After leaving the meeting location, CW-1 was kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 provided agents with (1) an Anderson Manufacturing, AM-15, multi-caliber rifle, serial number 23077153 and (2) an Anderson Manufacturing, AM-15, multi-caliber rifle, serial number 23077179. Agents again searched CW-1 for contraband and found none. I have reviewed the recording of the meeting which confirmed CW-1's account of the transaction.

### September 11, 2024 – Buy/Bust Operation Milford, MA

13. On September 11, 2024, ATF Boston, HSI Boston, the Massachusetts State Police and Milford Police Department conducted a multiple firearm buy/bust operation involving OLIVEIRA, SOARES, and other associates in Milford, MA. CW-2 had arranged to purchase several firearms from OLIVEIRA at his residence, located at 27 Grove Street, Milford, MA. Prior to the meeting, ATF agents searched CW-2's person for contraband with negative results. Agents equipped CW-2 with a UC vehicle and a recording device which recorded both audio and video, and official government funds to purchase the firearm. CW-2 was under constant surveillance by

law enforcement throughout the transaction. CW-2 was in contact with OLIVEIRA prior to the meeting. OLIVEIRA advised CW-2 that the individuals with the firearms would be arriving at 27 Grove Street shortly. CW-2 arrived at 27 Grove Street and parked along the curb in front of the residence. CW-2 then observed OLIVEIRA exit a black Honda Accord parked in a driveway next to 27 Grove Street. CW-2 observed OLIVEIRA remove a large black suitcase from the trunk of the black Honda Accord and bring the suitcase to the UC vehicle. CW-2 examined the firearms in the suitcase, handed OLIVEIRA $10,000.00 in pre-recorded government funds and brought the suitcase to the rear of the UC vehicle. CW-2 placed the suitcase in the rear compartment of the UC vehicle and provided Agents and Officers with the arrest signal. Arrest team personnel immediately moved in and placed OLIVEIRA in custody without incident. A secondary arrest team placed the occupants of the black Honda Accord into custody. The occupants of the black Honda Accord were identified as SOARES and two other individuals. SOARES and the other two individuals were arrested on state charges and placed into custody.

14. The following firearms were recovered from the black suitcase which came from the vehicle in which SOARES was an occupant: (1) one Anderson Manufacturing, AM-15, multi-caliber rifle, serial number 23079852 (the same style previously sold by SOARES with PIMENTA on August 26, 2024) (2) one Palmetto State Armory, PSAK, 7.62x39mm rifle, with an obliterated serial number; (3) one Mossberg, 500, 12 gauge, pistol grip shotgun, serial number U288177; (4) one Stoeger Industries, STR-9, 9mm pistol, serial number obliterated (serial number recovered from Stoeger box T6429-23U09887); (5) one Glock, 43, 9mm pistol, serial number ACAP747; and (6) additional magazines and firearm boxes.

15. Agents were able to locate from a public records search a Massachusetts Driver's license for a Joao Victor Da Silva Soares that was issued on October 10, 2023. When comparing

the Massachusetts Driver's license image of Joao Victor Da Silva Soares to the individual in the recorded controlled firearms transaction on August 26, 2024, and arrested on September 11, 2024, I believe that the individuals are one and the same, Joao Victor Da Silva SOARES.

16. Based on a query of the ATF Federal Licensing System, it has been determined that PIMENTA, OLIVEIRA and SOARES did not possess a license to engage in the business of dealing firearms at the time of the above events.

## CONCLUSION

17. Based on the information set forth above, I have probable cause to believe that Joao Victor Da Silva SOARES has conspired to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371. Accordingly, I respectfully request that the Court issue the attached criminal complaint and warrant for the arrest of SOARES.

/s/ Peter Milligan

Peter Milligan
Special Agent, ATF

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by   Telephone

/s/ Page Kelley
HON. M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS
on this 8th day of January, 2025

7